**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3128-23

JACK LAURIE,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

Argued September 8, 2025 – Decided September 18, 2025

Before Judges Sabatino and Walcott-Henderson.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx6159.

Samuel M. Gaylord argued the cause for appellant (Szaferman Lakind Blumstein & Blader, PC, attorneys; Samuel M. Gaylord, on the brief).

Brian D. Ragunan, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Brian D. Ragunan, on the brief).

PER CURIAM

The sole issue in this appeal is whether the Board of the Public Employees Retirement System ("PERS") erred in concluding appellant failed to prove that injuries he sustained in two separate work-related incidents in 2014 and 2017 were sufficient factors in causing his undisputed permanent disability, making him ineligible for accidental disability retirement benefits under N.J.S.A. 43:15A-43.

As we will discuss, the Board's medical expert who testified at the hearing, as well as the administrative law judge who relied on that expert in recommending the denial of appellant's claim, did not explicitly apply the causation standard prescribed by case law. Consequently, we are constrained to vacate the Board's final agency decision, and remand for reconsideration and rehearing using the proper causation test.

I.

Given that we are vacating the Board's decision and remanding for further proceedings, we need not detail the facts comprehensively. The following summary will suffice for our purposes.

At the relevant times, appellant Jack Laurie was a State employee, first with the Department of Community Affairs ("DCA") at the time of his 2014

accident and then with the Department of Military and Veterans Affairs ("DMAVA") at the time of his 2017 accident. His job with DMAVA involved traveling to various work sites. In both jobs, appellant was a member of the PERS pension system.

Appellant previously suffered a work-related injury in 2006 before he became a State employee. Although the details of that accident are not elaborated in our record, that accident caused him vertebral sprains and strains as well as bulging discs. Coincidentally, appellant was examined at that time by the same orthopedic physician he later retained in this case or a colleague in that doctor's office. Appellant collected workers compensation benefits from the 2006 accident and thereafter returned to work.

The first of the two State employment accidents at issue here occurred on September 11, 2014, when appellant was injured in a motor vehicle collision at work. He was examined by his medical expert and diagnosed with neck and low back injuries. As a result of that 2014 accident, appellant was limited to lifting twenty pounds. He returned to work with accommodations and transferred from the DCA job to the DMAVA position.

The second accident occurred on August 3, 2017, when appellant heard banging noises from the nearby handicapped bathroom and went to investigate.

3

Appellant discovered one of his co-workers thrashing in his wheelchair and rushed to assist him. Appellant managed to prevent the co-worker from falling out of the wheelchair but, in the process, he re-injured his neck and back. His MRIs from 2014, 2017 and 2019 revealed various disc herniations.

The parties stipulate that appellant has become permanently disabled following the 2017 accident. Appellant applied to the PERS for disability retirement benefits. The PERS granted him ordinary disability benefits under N.J.S.A. 43:15A-42 but denied his claim for the more enhanced "accidental" disability benefits under N.J.S.A. 43:15A-43. Appellant is now in his early seventies and has moved to Florida. He no longer works.

A two day Zoom hearing of the contested case was held in the Office of Administrative Law before an administrative law judge ("the first ALJ"). Appellant and his medical expert testified in his case. The Board presented competing expert medical testimony from an orthopedist, as well as testimony from a State investigator.

Before the first ALJ ruled on the merits of the case, she was appointed as a Superior Court judge. A successor jurist ("the second ALJ") was reassigned

the matter, pursuant to N.J.A.C. 1:1-14.13. The second ALJ reviewed the two days of hearing transcripts, as well as written summations from counsel.[1]

On March 25, 2024, the second ALJ issued a recommended decision, concluding that: (1) appellant's 2017 workplace accident was not "undesigned and unexpected" under the criteria of Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189 (2007); and (2) the 2014 and 2017 accidents did not "directly cause" appellant's present disability. The ALJ found the Board's medical expert's opinion that those accidents merely aggravated appellant's pre-existing neck and back conditions more credible than that of appellant's expert.

On review, the PERS Board issued a final agency decision on May 16, 2024, denying appellant's claim. The Board did, however, overturn the ALJ's application of the Richardson test, concluding the 2017 bathroom accident was "undesigned and unexpected." Even so, the Board adopted the ALJ's finding of unproven causation.

Appellant contends the Board and the second ALJ applied incorrect and overly stringent causation principles. He argues that an aggravation of injury

---

[1] Neither party disputes the propriety of the second ALJ handling the case in this manner.

A-3128-23

can be and has been qualified to establish causation in several accidental disability cases. The Board counters that the administrative decision is supported by substantial credible evidence in the record and is neither arbitrary nor capricious.

With respect to the key disputed issue of causation, the applicable PERS statute, N.J.S.A. 43:15A-43 requires an employee seeking accidental disability benefits to establish that the employee "is permanently and totally disabled <u>as a direct result</u> of a traumatic event occurring during <u>and as a result</u> of the performance of his regular or assigned duties." <u>Id</u>. (emphases added). The element of a qualifying traumatic event under the criteria of <u>Richardson</u> was adjudicated in appellant's favor by the Board. Hence, the only remaining issue is whether sufficient evidence of causation was established at the hearing.

As both counsel acknowledged at oral argument before us, the controlling precedent on the causation element is <u>Gerba v. Bd. of Trs. of Pub. Emp. Ret. Sys.</u>, 83 N.J. 174 (1980). <u>Gerba</u> construed the "direct result" language of the statute to require the employee to show the work-related injury was an "<u>essential significant or the substantial contributing cause </u>of the resultant disability." <u>Id</u>. at 186 (emphasis added). Although <u>Gerba</u> was repudiated by the Supreme Court in <u>Richardson</u> on other grounds inapplicable here, <u>Richardson</u>, 192 N.J. at 211-

213 (addressing Gerba's interpretation of "traumatic event"), the "essential significant or the substantial contributing cause" element has remained unaltered in our case law.

Neither Gerba nor the PERS statute define the terms "essential," "significant," or "substantial." Even so, common usage reflected in dictionary definitions shed light on those terms. "Significant" has been defined to mean, among other things, "of special importance; momentous as distinguished from insignificant." Black's Law Dictionary 1666 (12th ed. 2024).

In that same vein, "substantial" has been defined as "involving substance; material; real and not imaginary; important, essential and of real worth and importance." Black's Law Dictionary 1734 (12th ed. 2024). "Essential" connotes: "of, relating to, or involving the essence or intrinsic nature of something; of the utmost importance; basic and necessary." Black's Law Dictionary 686 (12th ed. 2024).

These concepts of significant, substantial, and essential delineated in Gerba do not require claimants to prove that the work-related accidents at issue were the sole causes of their disabilities. They can be a "contributing cause" and qualify based on the extent of their impact on the claimant's condition. 83 N.J. at 187. It is logical and conceivable that a pre-existing condition could have

7

been "significant" or "substantial," and that a work-related injury could also have been "significant" or "substantial." One does not necessarily rule out the other from playing a role in the chain of causation. Both the pre-existing condition and the accident, while each being significant or substantial, sometimes can act together to be disabling, as recognized in Gerba, and enable the employee to recover accidental disability benefits. Id. at 184. The law does not bar every worker who has a substantial or significant pre-existing medical condition, who then is severely injured at work from qualifying for accidental disability benefits. Although the work-related accident, must play an "essential" causal role in worsening a pre-existing condition, Gerba does not state it must be the "primary" cause.

Here, the Board's expert concluded that appellant's neck and back injuries were not, as he phrased it in his testimony, the "primary cause" of his present disability. Additionally, in his written report, admitted into evidence at the hearing, the Board's expert opined that "the accidents in question exacerbated pre-existing conditions and are not the primary cause of [appellant's] disability." But, as expressed, that is not precisely the Gerba test. Appellant is not obligated to prove his disabled condition was "primarily", "mainly", or "predominantly" caused by the 2014 and 2017 accidents. Instead, he needed to prove that the

accidents were (1) a "significant" or "substantial" contributing cause of his present condition, and (2) were "essential" factors in producing the condition.

A pre-existing medical condition, as exists here, does not render a claimant per se ineligible for accidental disability benefits. If the workplace accident worsened the condition in a "significant" or "substantial" contributing manner and was "essential" in worsening the claimant's condition to such a degree that the claimant can no longer perform job functions, then the claimant can still be eligible.

The Board stresses that appellant was taking pain medications prescribed by his family practitioner before the 2014 accident. That certainly is a relevant consideration, but the record is silent regarding the dosage or frequency of the medication, or the severity of appellant's pain level. The pain was apparently not so severe as to prevent appellant from continuing to work. Hence, there is some basis to infer that the 2014 and 2017 accidents could have been "essential" in tipping the balance.

The ALJ's decision did not cite to Gerba and did not explicitly apply its causation standard. The decision adopted the opinions of the Board's expert and concluded that appellant's back injuries were not the "direct and proximate result" of the 2014 and 2017 work-related injuries. Although that conclusory

terminology, except for the word proximate, tracks the wording of the statute, the decision did not analyze whether the accidents were a significant or substantial contributing cause of appellant's condition. Nor did the decision address whether the accidents were essential in worsening appellant's condition to such a degree that he could no longer perform his job duties.

The decision noted that appellant's medical expert "testified that it was possible that the prior injuries, including the 2006 incident, could have progressed." But that acknowledgment of a possible progression does not logically foreclose that the 2014 and 2017 accidents could have played a substantial or significant contributing role in accelerating or worsening that progression.

The ALJ's decision notably stated that "[a]dditionally, the petitioner's medical history was not free of issues concerning his back." The Gerba causation standard, however, does not require claimants to prove they were completely healthy persons who were "free of issues" before the work-related injury. That mode of analysis imposes an overly stringent burden on claimants, overlooking the possibility that pre-existing conditions and a new accident can act in combination to produce a permanent disability. To be sure, Gerba instructs that the claim should be denied if there is an underlying condition

"which itself has not been directly caused, but is only aggravated or ignited, by the trauma." 83 N.J. at 186. The word "only" within that observation separates insignificant and insubstantial contributing causes from more impactful ones. The ALJ's focus on whether appellant was "free of issues" before the two accidents overlooks that nuance.

Ordinarily we afford substantial deference to the findings of an administrative agency, and the credibility findings of an ALJ. See, e.g., Russo v. Bd. of Trs., Police & Firemen's Ret. Sys, 206 N.J. 14, 27 (2011). But here, because of the first ALJ's departure from the OAL, we have a distinctive context in which the second ALJ was in no better position to evaluate the competing medical experts' credibility from a cold record than we are. Moreover, the claim of error qualifies as an error of law that we can overturn de novo because the correct legal standard under Gerba was not used. Bowser v. Bd. of Trs. Police & Firemen's Ret. Sys., 445 N.J. Super. 165, 170-71 (App. Div. 2018).

For these reasons, we are constrained to vacate the Board's final agency decision and remand for rehearing and reconsideration of the case, this time explicitly utilizing the Gerba causation standard. In an abundance of caution and with no disrespect intended, we direct the matter to be heard anew by a different ALJ who has not already committed to previous factual findings. In re

Wolf, 231 N.J. Super. 365, 378 (App. Div. 1989). We leave it to the discretion of the parties and the agency as to whether updated or additional medical examinations are warranted. We intimate no views on the ultimate outcome.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3128-23